**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **THOMAS CROWTHER,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action File No:** |
| | **1:21-CV-04000-MHC** |
| **BOARD OF REGENTS OF THE** | |
| **UNIVERSITY SYSTEM OF** | |
| **GEORGIA, MICHELE REED,** | |
| **SCOTT THORP, BENJAMIN** | |
| **HUTTON, and BROOKS KEEL,** | |
| **Defendants.** | |

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT IN LIEU OF ANSWER
## WITH BRIEF IN SUPPORT

COME NOW The Board of Regents of the University System of Georgia ("BOR") and Defendants Scott Thorp, Benjamin Hutton, and Brooks Keel, in their official and individual capacities, by and through counsel of record, the Attorney General of the State of Georgia, and pursuant to Federal Rule of Civil Procedure 12(b)(6), file this Motion to Dismiss Plaintiff's Complaint in Lieu of Answer. Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief may be granted.

1

<u>**FACTUAL BACKGROUND**</u>[1]

Plaintiff was a Senior Lecturer of Art at Augusta University ("Augusta"). Complaint, ¶ 88. He often used nude models in his courses. *Id.* ¶ 90.

The Chair of the Art Department, Defendant Thorp, and Augusta's Title IX Coordinator, Defendant Reed, received complaints regarding Plaintiff's classroom conduct, including allegations that he touched students in class and took photos of nude models in the classroom. *Id.* ¶¶ 98, 100. On March 11, 2020, Defendant Thorp and the Dean of the College placed Plaintiff on administrative leave without pay, *id.* ¶¶ 111, 112, and Defendant Reed initiated a Title IX investigation and assigned Justin Jerome and Defendant Hutton to investigate.[2] *Id.* ¶¶ 120, 125. Defendant Reed advised Plaintiff that he could submit a written statement and witness list, and Plaintiff submitted same on March 30, 2020. *Id.* ¶¶ 122-23, 126.

Students complained that Plaintiff had taken a photo of a nude model in his classroom without the model's consent; touched female students; whispered in a

---

[1] The factual background is taken from Plaintiff's Complaint, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Laskar v. Peterson*, 771 F.3d 1291, 1296 (11th Cir. 2014). However, no admissions are made as to Plaintiff's allegations.

[2] Jerome and Hutton were assigned after the initial investigators indicated that they had conflicts that prevented them from serving. Complaint, ¶ 124.

female student's ear; spent more time with female students than with male

students; and made inappropriate jokes and spoke of "private things" in the

classroom. *Id.* ¶¶ 130-31, 134, 141, 143-44, 154. The investigators also spoke to

two of Plaintiff's classroom models, who said they gave Plaintiff consent to

photograph them. *Id.* ¶¶ 160-61. In his defense, Plaintiff submitted written

statements supporting his classroom conduct. *Id.* ¶¶ 157-58, 162.

On April 22, 2020, Defendant Thorp gave Plaintiff an unfavorable annual

evaluation, to which Plaintiff submitted a rebuttal. *Id.* ¶¶ 136, 139. Thorp advised

Plaintiff that he would not teach summer classes and gave Plaintiff the opportunity

to resign before the termination process began. *Id.* ¶¶ 140, 146. The faculty

committee reviewing Plaintiff's case recommended "further inquiry". *Id.* ¶ 153.

On June 19, 2020, Defendant Hutton provided Plaintiff with the initial Title

IX report, which found he violated Augusta's policy on sexual harassment and

recommended a one-semester suspension. *Id.* ¶¶ 164, 166. Because the students

requested anonymity, under the then-current Title IX policy, the report did not

disclose the identities of the complaining students. *Id.* ¶¶ 164, 168, 193. Plaintiff

submitted a written response, after which Defendant Hutton issued the final report

of the Title IX investigation. *Id.* ¶¶ 173, 176, 186.

Later, Plaintiff received a copy of a memorandum prepared by Associate

Provost Kathy Browder as part of the termination proceeding. *Id.* ¶ 205. In addition

to the current Title IX investigation, the memorandum cited a two previous

incidents involving Plaintiff. *Id.* ¶ 207. Browder recommended that, instead of

termination, the Dean consider other measures such as continued suspension,

remediation, or non-reappointment. *Id.*

The interim Dean of the College of Arts gave Plaintiff new job assignments

for the spring semester; none included teaching. *Id.* ¶ 203. She also suspended

Plaintiff from teaching for the fall semester due to his violation of the school's

sexual harassment policy. *Id.* ¶ 191. She also notified Plaintiff that his position as

Senior Lecturer would not be renewed for the upcoming school year. *Id.* ¶ 202.

Plaintiff believes that "the majority" of his scheduled classes were "reassigned to

female instructors or instructors that were involved in the Title IX process." *Id.* ¶

192.

Plaintiff appealed the Title IX investigation finding and the nonrenewal of

his lecturer position to Augusta's Provost, then to Defendant Keel, President of

Augusta, and then to the Office of Legal Affairs; the appeals were denied. *Id.* ¶¶

195-99, 209, 209-12, 218. He has filed charges of employment discrimination with

the Equal Employment Opportunity Commission and will amend his Complaint to "include relevant federal and state claims once he receives a right to sue." *Id.* at 4 n.1.

Plaintiff acknowledges that, as an employee of Augusta, he was bound by Augusta's Employee Handbook, Sexual Misconduct Policy, and Board of Regents Policy ("Policies"). *Id.* ¶ 220. Plaintiff alleges that because of "federal pressure placed on universities…to protect female accusers and to take a strong stance against males accused of sexual assault," Augusta's Title IX office "applied the Policies in a manner that resulted in harsher penalties for males accused of sexual misconduct as compared to females." *Id.* ¶ 222. He claims that, under the Policies, he was entitled to and deprived of a "discussion seeking settlement," a hearing, and to know the identities of the student-complainants.[3] *Id.* ¶¶ 225-30.

Plaintiff's claims against the Board of Regents under Title IX allege that (1) Augusta's investigation reached an erroneous outcome because it was flawed and unfair due to gender bias, and (2) Augusta retaliated against him by reassigning his duties and not renewing his contract because of gender bias in the Title IX office.

---

[3] Plaintiff does not bring an independent claim for breach of contract.

*Id.* ¶¶ 247-49, 259-62, 264-68. Plaintiff's § 1983 claim against the Board of Regents and Defendants Keel, Thorp, and Hutton, in their official and individual capacities, alleges violation of the Equal Protection Clause because he, as a member of a protected class (males), was subjected to different treatment on the basis of gender relative to female complainants and instructors. *Id.* ¶¶ 270, 273. Plaintiff claims damage to his reputation, earning capacity, future career opportunities, and emotional trauma. *Id.* ¶¶ 232-36, 252, 267, 277-78. He demands that Augusta be directed to reverse the outcome of its investigation, expunge his record, and change Augusta's Title IX processes. *Id.* ¶ 253, 279.

Plaintiff seeks money damages and injunctive relief against the Board on his first and second causes of action under Title IX. He also seeks money damages against Defendants Keel, Thorp, Hutton, and Reed in their individual capacities on his third cause of action under 42 U.S.C. § 1983. Finally, he seeks declaratory and injunctive relief against the Board and the Official Capacity Defendants on his third cause of action under § 1983. *Id.* at 69-70, (i) – (iv).

## APPLICABLE LEGAL STANDARD

In assessing the sufficiency of a complaint before discovery, courts look to Federal Rules of Civil Procedure 8 and 12. Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. Failure to meet the pleading standard of Rule 8(a) is cause for dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

To satisfy the requirement of Rule 8(a) and avoid dismissal under Rule 12(b)(6), the complaint must allege facts sufficient to establish that the claim is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Plausibility requires more from a pleading than "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Rather, the factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 548.

**ARGUMENT**

I.      **The Board of Regents and the Official Capacity Defendants are not amenable to suit under 42 U.S.C. § 1983.**

Plaintiff may only bring a Section 1983 action for deprivations of his civil rights against a "person". 42 U.S.C. § 1983. The Board of Regents is an entity of the State of Georgia. *See, e.g., Nicholl v. Bd. of Regents of the Univ. Sys. of Ga.*, 706 F. App'x 493, 495 (11th Cir. 2017). Because it has been "decisively settled" that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," the Board and the official capacity defendants are not amenable to suit in a § 1983 action. *Tindol v. Ala. Dep't of Revenue*, 632 Fed. App'x 1000, 1001 (2015), citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989) (Congress did not provide a forum for civil rights claims against States via § 1983, and an official capacity suit is "no different from a suit against the State itself"). *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69, 117 S. Ct. 1055 (1997) ("§ 1983 actions do not lie against a State"). Insofar as Plaintiff's Complaint seeks money damages against the State and the Official Capacity Defendants, no remedy is available to him under § 1983, and his claims should be dismissed.

## II.    The Board of Regents is entitled to sovereign immunity and Eleventh Amendment immunity on Plaintiff's § 1983 claim.

Even if a remedy was available to Plaintiff under § 1983, his claims are barred by sovereign immunity. The Board of Regents has both sovereign immunity and Eleventh Amendment immunity[4] from private suits pursuant to § 1983. The Constitution "does not provide for federal jurisdiction over suits against nonconsenting States," *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73, 120 S. Ct. 631, 640 (2000), and § 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits, unless the immunity is waived or overridden." *Nicholl v. Bd. of Regents of the Univ. Sys. of Ga.*, 706 F. App'x 493, 497 (11th Cir. 2017), citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304 (1989). Eleventh Amendment immunity "extends not only to the state itself, but also to state officers and entities when they act as an 'arm of the

_____

[4] The Supreme Court of the United States has said that, though often referred to as "Eleventh Amendment immunity," in fact a State's sovereign immunity "neither derives from nor is limited by the terms of the Eleventh Amendment...[r]ather,…the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today…" *Alden v. Maine*, 527 U.S. 706, 713, 119 S. Ct. 2240, 2246-47 (1999).

state.'" *Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764, 768 (11th Cir. 2014). The Board of Regents is "an arm of the state of Georgia for purposes of the Eleventh Amendment, and, therefore, is entitled to sovereign immunity…" *Nicholl,* 706 F. App'x at 495, citing *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616-17, 122 S. Ct. 1640 (2002) and *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301-02 (11th Cir. 2007). The State (and therefore the Board) is immune from money damages in § 1983 suits. *Nicholl* at 498.

A state may waive its Eleventh Amendment immunity or consent to be sued, or Congress can abrogate the state's immunity. *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995). However, Congress's intent to abrogate must be "unmistakably clear in language of the statute." *Kimel*, 528 U.S. at 73. The Eleventh Circuit has held that Congress did not abrogate states' immunity from § 1983 suits "nor has the Board of Regents waived its Eleventh Amendment immunity." *Williams,* 477 F.3d at 1301.

Therefore Plaintiff's § 1983 claims against the Board are barred by sovereign immunity and Eleventh Amendment immunity and should be dismissed.

### III. The Official Capacity Defendants are immune from Plaintiff's claims for money damages.

In order to prevail on a civil rights action under § 1983, Plaintiff must show he was deprived of a federal right by a person acting under color of state law. *Sarver v. Jackson,* 344 Fed. App'x 526, 527 (11th Cir. 2009). Official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent" and should "in all respects other than name be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989) (official-capacity suit is against the official's office and is "no different from a suit against the State itself"). To the extent they are sued in their official capacities, Defendants Keel, Thorp, and Hutton, as employees of Augusta, are state officials. *See Sarver*, 344 F. App'x at 526. Eleventh Amendment immunity from claims for money damages "extends not only to the state itself, but also to state officers and entities when they act as an 'arm of the state.'" *United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 601 (11th Cir. 2014). Therefore Defendants Keel, Thorp, and Hutton are not subject to suit for money damages in their official capacities, and such claims should be dismissed.

## IV.     Title IX provides no remedy for Plaintiff's discrimination claims.

In the context of employment discrimination claims, the Northern District of

Georgia has held that Title IX of the Education Amendments of 1972 is preempted

by Title VII of the Civil Rights Act of 1964.[5] *See, e.g., Cooper v. Georgia*

*Gwinnett College*, No. 1:16-CV-01177-TWT, 2016 U.S. Dist. LEXIS 147705, at

*15-18 (N.D. Ga. Sept. 16, 2016), *report and recommendation adopted*, 2016 U.S.

Dist. LEXIS 147120 (N.D. Ga. Oct. 25, 2016). In *Cooper,* this Court followed

other courts in the Eleventh Circuit in holding that

> Title VII provides the exclusive remedy for individuals alleging
> employment discrimination on the basis of sex in federally funded
> educational institutions. [citations omitted] Given the availability of a
> private remedy under Title VII for aggrieved employees, to allow relief
> under Title IX would disrupt a carefully balanced remedial scheme for
> redressing employment discrimination by [federal] employers…

*Cooper* at *14-15, citing the Fifth Circuit[6] in *Lakoski v. James*, 66 F.3d 751 (1995)

(reaching the issue of preemption in Title IX case even where plaintiff did not file

---

[5]The Eleventh Circuit thus far has declined to address the question of preemption.
*See Heatherly v. Univ. of Ala. Bd. of Trs.*, 778 F. App'x 690, 694 (11th Cir. 2019)
("as yet undecided in this Circuit [is] whether Title VII preempts Title IX when a
plaintiff alleges employment discrimination on the basis of sex and Title VII
affords a parallel remedy").

[6] In addition to the Fifth Circuit, the First, Sixth, and Seventh Circuits likewise
have held that Title IX does not provide a private right of action for employment

an EEOC charge nor plead a violation of Title VII); *Torres v. Sch. Dist.*, No. 8:14-cv-1021-T-33TBM, 2014 U.S. Dist. LEXIS 117254, at \*15 (M.D. Fla. Aug. 22, 2014) (Title VII preempts a private right of action under Title IX); and *Blalock v. Dale County Bd. of Educ.*, 84 F. Supp. 2d 1291, 1298 (M.D. Ala. 1999). *See also Kavianpour v. Bd. of Regents of the Univ. Sys. of Ga.*, 1:20-CV-00152-MLB-RGV, 2018 U.S. Dist. LEXIS 244055 (N.D. Ga. Jan. 28, 2021) (recommending dismissal of Title IX claims on basis of Title VII preemption); *Reese v. Emory Univ.*, 1:14-CV-2222-SCJ, 2015 U.S. Dist. LEXIS 193183 (N.D. Ga. Jan. 15, 2015); *Hankinson v. Thomas Cty. Sch. Dist.*, Civil Action No. 6:04-CV-71-HL, 2005 U.S. Dist. LEXIS 25576, at \*6 (M.D. Ga. Oct. 28, 2005); *Yegidis v. Bd. of Trs. of Fla. Gulf Coast Univ.*, No. 2:09-CV-353-FtM-36DNF, 2011 U.S. Dist. LEXIS 165954, at \*26 (M.D. Fla. Jan. 21, 2011). These courts have held that Congress "did not intend to allow relief under Title IX to offer a bypass to the administrative

---

discrimination for employees of federally funded education institutions. *See, e.g., Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857, 862 (7th Cir. 1996) (Title VII preempted any claims for equitable relief under § 1983 or Title IX), *Junior Coll. Dist. of St. Louis Cty., Mo. v. Califano*, 597 F.2d 119, 121 (6th Cir. 1979) (Title IX shows no intent to include employees of an educational institution), and *Islesboro Sch. Comm. v. Califano*, 593 F.2d 424, 428 (1st Cir. 1979).

exhaustion requirements established" under Title VII. *Cooper* at *17, citing *Torres* and *Lakoski*.[7]

Because Title VII provides the exclusive remedy for Plaintiff to pursue a claim for employment discrimination on the basis of sex at Augusta, his Title IX claims are preempted by Title VII and must be dismissed.

## V. Plaintiff's claims for injunctive relief are barred by the Eleventh Amendment.

Plaintiff seeks injunctive relief against the Board of Regents on his Title IX claims: to reverse the outcome and findings of the Title IX investigation; to expunge his disciplinary record; to remove any mention of the investigation from his files; to and "issue an update/correction to any third parties to whom Plaintiff's disciplinary record may have been disclosed." Doc. 1 at ¶¶ 253, 268, p. 69 ¶¶ (i)-(ii). He seeks declaratory relief and injunctive relief against the Board and the Official Capacity Defendants in his § 1983 claim, seeking to enjoin "violations of the Fourteenth Amendment in the process of investigating and adjudicating sexual misconduct complaints." *Id.* at ¶ 279, p. 70 ¶ (iv). Those alleged violations

---

[7] The sole case cited by Plaintiff in support of his private right of action as an employee under Title IX, *Doe v. Mercy Catholic Med. Ctr.,* 850 F.3d 545 (3d Cir. 2017), is not controlling on this Court. *See* Doc. 1 at ¶ 257.

included, presumably, Augusta's failure to conduct an "adequate, reliable, and impartial investigation" of him and engaging in a "pattern of unfair investigations and adjudications." *Id.* at ¶¶ 248, 250.

The Eleventh Amendment bars suits seeking retrospective or compensatory relief against state officials. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). However, under the doctrine created in *Ex Parte Young*, prospective relief against a state official in his official capacity is not barred by the Eleventh Amendment because it is not considered an action against the state. *Wells v. Columbus Tech. Coll.*, No. 4:11-CV-79-CDL, 2012 U.S. Dist. LEXIS 52854, at *11 (M.D. Ga. Apr. 16, 2012), *aff'd*, 510 F. App'x 893 (11th Cir. 2013), citing *Ex Parte Young* and *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099 (1985). In determining if the injunctive relief sought is barred by the Eleventh Amendment, the Court need only conduct a "straightforward inquiry into whether the complaint alleges an *ongoing* violation of federal law and seeks relief [that is] *prospective.*" *Id.,* citing *Verizon Md., Inc., v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753 (2002) (emphasis added). Likewise, in order to receive declaratory relief, the plaintiff must show "ongoing or threatened

violations" of law. *Id.* at \*12, citing *Green v. Mansour*, 474 U.S. 64, 73, 106 S. Ct. 423 (1985).

Here Plaintiff seeks injunctive and declaratory relief to remedy *past* violations of his constitutional rights. By seeking to reverse the findings and outcome of Augusta's investigation, and make corrections to his personnel records, the relief Plaintiff seeks is retrospective. Moreover, in attempting to enjoin alleged constitutional violations that occurred in Augusta's "process of investigating and adjudicating sexual misconduct complaints," Plaintiff actually seeks to "adjudicate the legality of past conduct." *Summit Med. Assocs.,* 180 F.3d at 1337. Such relief is barred as being retrospective in nature, for

> [r]elief that in essence serves to compensate a party injured in the past … is barred even when the state official is the named defendant. This is true if the relief is expressly denominated as damages [and] also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else.

*Papasan v. Allain*, 478 U.S. 265, 278, 106 S. Ct. 2932, 2940 (1986). *See Green,* 474 U.S. at 69-70.

In *Go v. Board of Regents of Univ. Sys. of Ga., et al.*, this Court found that the requested reinstatement of a student and removal of negative information from his file were not requests for prospective relief, therefore the claims were not

permitted by *Ex Parte Young* and were barred by the Eleventh Amendment. 1:18-CV-03233-MHC, at *14 (N.D. Ga. November 1, 2018), citing *Wells v. Columbus Tech. Coll.*, No. 4:11-CV-79-CDL, at *4, 12 (M.D. Ga. Apr. 16, 2012), *aff'd*, 510 F. App'x 893 (11th Cir. 2013). In *Wells*, the court found that no prospective relief was sought because the prayer to reform the student conduct policies and disciplinary procedures that allegedly violated plaintiff's due process rights was in fact seeking relief to remedy *past* violations of such rights. Nor does Plaintiff's prayer to enjoin "violations of the Fourteenth Amendment in the process of investigating and adjudicating sexual misconduct complaints" survive as prospective, because the alleged violations of which he complains occurred in the past. Plaintiff does not and cannot seek redress for future harm. *See Cooper v. Georgia Gwinnett College*, No. 1:16-CV-01177-TWT, 2016 U.S. Dist. LEXIS 147705, at *15 (N.D. Ga. Sept. 16, 2015) ("'prospective relief' refers to the ongoing or future threat of *harm*, not relief") (emphasis in original). *See also Fedorov v. Bd. of Regents*, 194 F. Supp. 2d 1378, 1387 (S.D. Ga. 2002) (seeking reinstatement as a student did not qualify as prospective relief). Nor has Plaintiff alleged that he is subjected to ongoing or threatened violations of federal law that would entitle him to declaratory relief.

Because his claims for injunctive and declaratory relief do not satisfy the requirements of *Ex Parte Young*, they are barred by the Eleventh Amendment and should be dismissed.

**VI.     Defendants Thorp, Hutton, and Keel, in their individual capacities, are entitled to qualified immunity from Plaintiff's equal protection claim.**

Government officials performing discretionary functions are completely shielded from civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). *See also Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038 (1987) (public officials are immune "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated"). In order to have the protection of qualified immunity, the official first must show that he was engaged in a discretionary function when he performed the acts complained of by the plaintiff. *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Then the burden shifts to the plaintiff to show that the official violated a constitutional right, and that the right was clearly established at the time of the violation alleged. *Id.*

In determining whether the official was performing a discretionary function, the courts look to whether the official performed a legitimate job-related function through means that were within his power to utilize. *Holloman*, 370 F.3d at 1265. Discretionary authority is shown where "objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994). Without question the acts of Defendants Hutton, Thorp, and Keel were within their discretionary authority and occurred in the performance of their duties as investigator, department chair, and president, respectively. Therefore the burden shifts to Plaintiff to show that these officials violated his clearly established constitutional rights.

In order to show that plaintiff's rights were clearly established, the "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *King v. Pridmore*, 961 F.3d 1135, 1145 (11th Cir. 2020), citing *Malley* v. *Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). The law requires "fair warning" to the

official that the conduct at issue violates a constitutional right. *See Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002). A plaintiff may show the official had fair warning of his clearly established right in three ways:

> First, the plaintiffs may show that a materially similar case has already been decided. Second, the plaintiffs can point to a broader, clearly established principle that should control the novel facts of the situation. Finally, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary. Under controlling law, the plaintiffs must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [relevant State Supreme Court].

*Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (noting that cases under the second and third methods are rare and narrow exceptions).

Pretermitting whether or not he has adequately alleged a violation of equal protection, Plaintiff has nevertheless failed to show that Defendants had fair warning that their conduct was in violation of federal law. Plaintiff's only effort at showing any notice to Defendants Hutton, Thorp, and Keel is his historical narrative regarding the interim guidance on Title IX provided in the "2017 Q&A" from the Department of Education's Office of Civil Rights. *See* Doc. 1 at ¶¶ 51, 54-58. Yet nothing in the narrative indicates that Hutton, Thorp, or Keel were on fair notice that their actions and application of the Title IX policies and procedures

were in violation of Plaintiff's right to equal protection under the Fourteenth

Amendment. Plaintiff does not point to a single materially similar case decided

before the conduct at issue here that would : no case stating that Defendant Hutton

was on clear notice that keeping the identities of the complaining students

anonymous, or declining to interview every person on Plaintiff's list, was a

violation of equal protection, *see* Doc. 1 at ¶¶ 164, 177-79; no case stating that

Defendant Thorp's decision to place Plaintiff on administrative leave pending the

outcome of the Title IX investigation, or giving Plaintiff a negative performance

evaluation that took into consideration both past and current complaints against

Plaintiff, violated his equal protection rights, *see id. at* ¶¶ 111, 136-37; and no case

stating that Defendant Keel's denial of Plaintiff's appeals were in violation of

constitutional rights. *See id.*at ¶¶ 198, 211.

      "[I]f a plaintiff cannot show that the law at issue was clearly established

under the first (materially similar case on point) method, that usually means

qualified immunity is appropriate." *King v. Pridmore*, 961 F.3d 1135, 1146 (11th

Cir. 2020); *see also Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019)

(where case law "has not staked out a bright line, qualified immunity almost

always protects the defendant"). Because Plaintiff has not shown that the

discretionary acts done by Defendants Hutton, Thorp, and Keel were in violation

of clearly established constitutional rights of which a reasonable person would

have known, the Defendants are entitled to qualified immunity.

**VII. Plaintiff fails to state a claim for gender discrimination because he does not allege a similarly situated comparator.**

Even if Plaintiff's Title IX claims were not preempted by Title VII, he fails

to plead a facially plausible claim for gender discrimination in the investigation

and adjudication of his case under Title IX and the Equal Protection Clause. Doc. 1

at ¶¶ 247-48. In order to establish a *prima facie* case of discrimination, the plaintiff

must demonstrate the discriminatory intent of the state by showing that he belongs

to a protected class, was subject to an adverse employment action, was qualified to

perform his job, and that the employer treated "similarly situated" employees

outside his class more favorably than it treated him. *See Lewis v. City of Union

City*, 918 F.3d 1213, 1220-21 (11th Cir. 2019); *Rollins v. Bd. of Trs.*, 647 F. App'x

924, 938 (11th Cir. 2016). The comparator employee must be similarly situated to

the plaintiff in "all material respects"—that is, "sufficiently similar, in an objective

sense, that they cannot reasonably be distinguished." *Id.* at 1228. A similarly

situated comparator will "ordinarily have engaged in the same basic conduct (or

misconduct) as the plaintiff; have been subject to the same employment policy, guideline, or rule as the plaintiff; have been under the jurisdiction of the same supervisor as the plaintiff; and share the plaintiff's employment or disciplinary history." *Kavianpour v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:20-cv-152-MLB, 2021 U.S. Dist. LEXIS 126686, at *23 (N.D. Ga. Mar. 29, 2021), citing *Lewis* at 1227-28. Without a similarly situated comparator, no discrimination claim will stand, as "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *Whitaker v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 20-13618, 2021 U.S. App. LEXIS 27544, at *10 (11th Cir. Sep. 14, 2021).

Plaintiff fails to plead facts plausibly alleging that Augusta treated him differently than similarly situated female employees. First, he does not identify a single comparator by name or title. He alleges only that "[u]pon information and belief…the majority of [his] classes were reassigned to female instructors or instructors that were involved in the Title IX process." Doc. 1 at ¶ 192; *see id.* at ¶ 274 ("the majority of Plaintiff's classes were given to female instructors").[8] There

---

[8] In an even less specific allegation, Plaintiff claims "upon information and belief" that other Augusta investigations resulted in "serious sanctions being imposed on male students and employees, while not making comparable efforts with respect to allegations of sexual violence and abusive conduct made against non-male

is no allegation of a female employee who engaged in the same basic conduct or misconduct as Plaintiff—that is, no female employee who photographed models, touched female students, or made inappropriate comments in the classroom. *See* Doc. 1 ¶¶ 93, 100, 143. Nor does he allege that any female employee, subject to the same work rules and policies as Plaintiff, was retained (despite her conduct) while Plaintiff's employment contract was not renewed. *See Lewis* at 1227, citing *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) (comparator was subject to the same workplace policy but was disciplined less harshly than plaintiff). And there is no allegation that a female employee shared Plaintiff's disciplinary history—which history included a previous "incident" ten years before (commemorated in a written agreement signed by Plaintiff) and an investigation into a complaint about Plaintiff's behavior just one year before. Doc. 1 at ¶¶ 147, 207.

To establish a case of discrimination, Plaintiff must show that Augusta treated "similarly situated" employees outside his class more favorably than it treated him. Plaintiff's allegation of gender discrimination—which amounts to

---

students." Doc. 1 at ¶ 250. Again, no similarly situated comparator is provided.

nothing more than that unidentified female instructors taught his courses after he was suspended or non-renewed—is conclusory, devoid of specifics, and vague, which is "far from enough to establish a valid comparator." *Kavianpour v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:20-cv-152-MLB, 2021 U.S. Dist. LEXIS 126686, at *24-25, 33 (N.D. Ga. Mar. 29, 2021) (noting that "courts often dismiss complaints for failing to allege enough factual support relating to a similarly situated comparator" and granting motion to dismiss on basis that Title IX and Title VII claims failed to plead a link between plaintiff's sex and the adverse employment action).

Because Plaintiff has failed to plead sufficient factual matter regarding a similarly situated comparator to support a reasonable inference that Augusta discriminated against him on the basis of his gender, his discrimination claim fails to meet the *Twombly* and *Iqbal* plausibility standard and must be dismissed.

## VIII. Plaintiff fails to state a claim for retaliation because he does not allege that he engaged in a protected expression.

Plaintiff claims Augusta unlawfully retaliated against him pursuant to Title IX because he complained of sex discrimination—specifically, "defending himself against an unauthorized and unwarranted investigation." Doc. 1 at ¶¶ 258, 267. The

alleged retaliation was in the form of a negative performance evaluation and then non-renewal of his contract. *Id.* at ¶¶ 259, 262. In order to make a retaliation claim, the plaintiff must show "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse action; and (3) that there is some causal relationship between the two events." *Whitaker v. Bd. of Regents of the Univ. Sys. of Ga.*, No. CV 118-141, 2020 U.S. Dist. LEXIS 153263, at *8-9 (S.D. Ga. Aug. 24, 2020), citing *Kocsis v. Fla. State Univ. Bd. of Trs.*, 788 F. App'x 680, 686, 686 n.4 (11th Cir. 2019). An individual engages in protected expression when he "opposes practices made unlawful by the relevant statute." *Id.*

Plaintiff pleads no facts supporting his claim that he was retaliated against for complaining of sex discrimination during the investigation. *See* Doc. 1 at ¶¶ 254-268. He does not allege a single statement by him of concern or complaint *regarding his sex* during Augusta's inquiry, much less expression rising to the level of protection. There is no allegation that his grievance letter complained of sex discrimination, nor that he communicated any such concerns in his various submissions to the Defendants. *See* Doc. 1 at ¶¶ 151, 187, 195, 197, 199, 209, 211, 212-214, 217. The complaint is entirely devoid of any evidence that a reasonable person would have interpreted his communications as complaints of unlawful

practices under Title IX, *see Whitaker v. Bd. of Regents of the Univ. Sys. of Ga.*, No. CV 118-141, 2020 U.S. Dist. LEXIS 153263, at \*9 (S.D. Ga. Aug. 24, 2020), aff'd, 2021 U.S. App. LEXIS 27544, at \*10 (11th Cir. Sep. 14, 2021) (dismissal of retaliation claim appropriate where plaintiff did not allege that he conveyed belief that unfair treatment was because of his gender), or that his expression of discrimination is anything other than *post-factum*. *See Kocsis* at \*13 (no retaliation where the protected expression occurred after the filing of plaintiff's complaint). Because Plaintiff has failed to plead sufficient factual matter showing a protected expression to support a reasonable inference that he was retaliated against for complaining of sex discrimination during Augusta's investigation, his retaliation claim fails to meet the *Twombly* and *Iqbal* plausibility standard and must be dismissed.

## CONCLUSION

Plaintiff's Complaint should be dismissed for failure to state a plausible claim for relief against the Board and Defendants Keel, Thorp, and Hutton in their official and individual capacities.

Plaintiff has not pled enough facts to state a claim for relief under Title IX or § 1983 that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570,

127 S. Ct. 1955, 1974 (2007). The Defendants are immune from damages for the claims he asserts. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Moreover, while Plaintiff's legal conclusions may provide an interesting framework for his historical narrative of Title IX policy, they "must be supported by factual allegations" in order to withstand a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940 (2009). Simply put, for the reasons explained above, Plaintiff has not pled facts to support his claims for discrimination or retaliation. Because Plaintiff has "not nudged [his] claims across the line from conceivable to plausible," his Complaint must be dismissed. *Twombly* at 570.

<div style="margin-left:40%">

Respectfully submitted,

CHRISTOPHER M. CARR     112505
Attorney General

**s/ Bryan K. Webb**
BRYAN K. WEBB
Deputy Attorney General     743580

</div>

<div align="center">

**s/ Katherine P. Stoff**
</div>

KATHERINE P. STOFF
Senior Assistant Attorney General    536807


<div align="center">

**s/ Devin Hartness Smith**
</div>

DEVIN HARTNESS SMITH    918980
Special Assistant Attorney General


PLEASE SERVE:

DEVIN HARTNESS SMITH
Special Assistant Attorney General
Cook & Tolley LLP
304 East Washington Street
Athens, Georgia 30601
Telephone: (706) 549-6111
Facsimile: (706) 548-0956
Email: devinhsmith@cooktolley.com
*Counsel for Defendant Board of Regents of the University System of Georgia and Defendants Thorp, Hutton, and Keel*

## CERTIFICATE OF SERVICE

I certify that I have this day served the foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to all attorney of records.

This 12th day of November, 2021.

**s/ Devin Hartness Smith**
DEVIN HARTNESS SMITH            918980