| | | |
|---|---|---|
| THOMAS CROWTHER, | &#124; | |
| | &#124; | |
| Plaintiff, | &#124; | |
| | &#124; | |
| v. | &#124; | Civil Action File No: |
| | &#124; | 1:21-CV-04000-MHC |
| BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, MICHELE REED, SCOTT THORP, BENJAMIN HUTTON, and BROOKS KEEL, | &#124; | |
| | &#124; | |
| Defendants. | &#124; | |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COME NOW The Board of Regents of the University System of Georgia

("BOR") and Defendants Scott Thorp, Benjamin Hutton, and Brooks Keel, in their

official and individual capacities, by and through counsel of record, the Attorney

General of the State of Georgia, and file their reply to Plaintiff's opposition to their

Motion to Dismiss Plaintiff's Complaint in Lieu of Answer.

**I.** **Plaintiff fails to allege a plausible Title IX claim because of Title IX preemption and the absence of a similarly situated comparator.**

    **a. Title IX is preempted by Title VII for employment discrimination claims.**

The Northern District is one of many jurisdictions that has repeatedly held that Title VII preempts Title IX as the exclusive remedy for employment-based sex discrimination claims. While this Court is not bound by another judge in the District, it is "not prohibited from adopting well-reasoned, non-binding persuasive authority" from within the District. *Stafford v. Kedrion S.P.a.*, No. 1:20-CV-04970-SCJ, 2021 U.S. Dist. LEXIS 148378, at *7-8 (N.D. Ga. July 22, 2021). The District has been persuaded three times in the past six years that the preemption doctrine is well-reasoned. *See Cooper v. Georgia Gwinnett College*, No. 1:16-CV-01177-TWT, 2016 U.S. Dist. LEXIS 147705, at *15-18 (N.D. Ga. Sept. 16, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 147120 (N.D. Ga. Oct. 25, 2016); *Kavianpour v. Bd. of Regents of the Univ. Sys. of Ga.*, 1:20-CV-00152-MLB-RGV, 2018 U.S. Dist. LEXIS 244055 (N.D. Ga. Jan. 28, 2021) (recommending dismissal of Title IX claims on basis of Title VII preemption); *Reese v. Emory Univ.*, 1:14-CV-2222-SCJ, 2015 U.S. Dist. LEXIS 193183 (N.D. Ga. Jan. 15, 2015).

Plaintiff's claim that *Jackson v. Birmingham Board of Education* called into question the decision upon which *Cooper* relied is unpersuasive. First, *Jackson* declined to reach the issue of Title VII preemption. 309 F.3d 1333, 1348 n.16 (11th Cir. 2002). Second, *Cooper* was decided more than a decade after *Jackson*, and the Court should presume that the *Cooper* court was well aware of it.

As for the posture of Plaintiff's action, he chose to file this case before exhausting his administrative remedies under Title VII—exactly the type of "bypass of the remedial process" with which the *Lakoski* court was concerned. *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995). Because Title VII provides the exclusive remedy for Plaintiff to pursue a claim for employment discrimination on the basis of sex at Augusta, his Title IX claims are preempted by Title VII and must be dismissed.

**b. The Eleventh Circuit has not adopted the Second Circuit "erroneous outcome" test, but even if such test applied in the employment context, Plaintiff has not pleaded facts to cast articulable doubt on the accuracy of the proceedings.**

Plaintiff asserts that his Title IX claims do not require a similarly situated comparator because the Eleventh Circuit has adopted the erroneous outcome theory as an "appropriate examination of plausible Title IX liability." Doc. 36 at

20. The only Eleventh Circuit case identified by Plaintiff is *Doe v. Valencia College*.[1]

In *Valencia*, the Eleventh Circuit assumed without deciding that a *student* could show a Title IX violation by satisfying the test laid out by the Second Circuit. The court recognized the test, but did not adopt it, noting that neither the Supreme Court nor the Circuit has established a framework for Title IX challenges to university disciplinary proceedings. Instead, the Court *assumed* "that a *student* can show a violation of Title IX by satisfying the 'erroneous outcome' test" from the Second Circuit upon showing both that the student was "innocent and wrongly found to have committed an offense *and* that there is a causal connection between the flawed outcome and gender bias." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1236 (11th Cir. 2018) (emphasis added).

---

[1] Plaintiff also cites *Doe v. Samford Univ.*, 2021 U.S. Dist. LEXIS 153221 (N.D. Ala. Aug. 15, 2021) as utilizing the erroneous outcome theory. But the *Samford University* court also noted that, "after the Eleventh Circuit issued *Valencia College*, several other Circuits declined to adopt the *Yusuf* theories, instead inquiring simply whether the facts alleged raise a plausible inference that the university discriminated against a student on the basis of sex. [citations omitted] The court finds those cases persuasive." *Id.* at *17.

Even if the *Yusuf* test, recognized by *Valencia*, applied here, in the employment context, the Court need never reach the second prong of the test because Plaintiff has not alleged facts showing he was innocent of the offense giving rise to his non-renewal. Plaintiff's alleged facts are insufficient to cast "some articulable doubt on the accuracy of the outcome" of the proceedings. *Valencia* at 1236. Like the *Valencia* defendant, Plaintiff *admitted* the underlying conduct—photographing nude models in class, *see* Doc. 1 at ¶¶ 92-93, 160-161— conduct that violated the sexual misconduct policy and the art department's model policy, subjecting Plaintiff to non-renewal of his contract. *See Valencia Coll.* at 1236 (student admitted underlying conduct, which met the school's definition of stalking and was punishable by suspension, therefore no need to reach the issue of causal connection). Because Plaintiff has not shown a "genuine issue about the correctness of the outcome…his Title IX claim fails, and [the Court] need not decide whether there is a causal connection between the outcome of the proceeding and gender bias." *Valencia Coll.* at 1236.

### c. Plaintiff fails to state a claim for gender discrimination in violation of the equal protection clause because he does not allege a similarly situated comparator.

Plaintiff has not alleged any facts from which the Court could draw a reasonable inference that he was treated differently than another similarly situated person, or that the differential treatment was motivated by an intent to discriminate against him based on gender. *See Whitaker v. Bd. of Regents of the Univ. Sys. of Ga.,* No. 20-13618, 2021 U.S. App. LEXIS 27544 at *13 (11th Cir. Sept. 14, 2021). Because Plaintiff does not allege facts to support a claim that Augusta treated similarly situated employees outside his protected class more favorably than it treated him, he cannot establish a prima facie case of discrimination. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220-21 (11th Cir. 2019); *Rollins v. Bd. of Trs.*, 647 F. App'x 924, 938 (11th Cir. 2016). Stating that his classes were given to female instructors after his suspension is insufficient; a comparator must have, among other things, "engaged in the same conduct as plaintiff" and share his employment history. *See Lewis*, 918 at 1220-21. Instead, Plaintiff would have the

Court join in his speculation that comparators must exist, *see* Doc. 36 at 35-36, and

give him leave to discover them at Defendants' expense. Such is not the law.[2]

Without a valid comparator, Plaintiff's equal protection claim does not raise

his right to relief above the speculative level and should be dismissed. *Id.*, citing

*Bell Atlantic Corp. v. Twombly*, 555 U.S. 544, 555 (2007).

## II.   Plaintiff fails to state a claim for retaliation because he does not allege that he engaged in a protected expression.

Plaintiff claims that merely defending the "charges" against him and

appealing Augusta's findings amounts to "protected activity". Doc. 36 at 27. But

statutorily protected expression is not merely defending oneself—instead, the

expression must "oppose[] practices made unlawful by the relevant statute."

*Whitaker v. Bd. of Regents of the Univ. Sys. of Ga.*, No. CV 118-141, 2020 U.S.

Dist. LEXIS 153263, at *8-9 (S.D. Ga. Aug. 24, 2020). *See also Knight v. UPS*,

No. 1:17-cv-00734-ODE-RGV, 2017 U.S. Dist. LEXIS 60334, at *7 (N.D. Ga.

---

[2] The cases cited by Plaintiff, *Mitchell v. City of Lafayette*, No. 4:10-CV-00118-HLM-WEJ, 2011 U.S. Dist. LEXIS 160542, at *12 (N.D. Ga. Feb. 11, 2011), and *Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009), address discovery of *statistical evidence*, not similarly situated comparators.

Mar. 24, 2017) ("Statutorily protected expression refers to an expression in opposition to some practice that is unlawful under [the law], such as an internal complaint of racial discrimination or sexual harassment.").

Plaintiff does not allege that his defense raised any concerns about gender discrimination. He does not assert a single statement by him of concern or complaint *regarding his sex* during Augusta's inquiry. Instead, Plaintiff's complaints were either general (*e.g.*, that the students had embarked on a "smear campaign" against him, *see* Doc. 1 at ¶¶ 106, 108, 128); procedural (regarding the timing and status of the investigation and interviews, *see id.* at ¶¶ 116, 119, 212-214); or disputing that he had engaged in inappropriate behavior (*see id.* at ¶¶ 139, 150-151, 156, 162, 173, 187, 195, 197). None raised concern that he was discriminated against for being male, therefore they did not rise to the level of protected expression. While Plaintiff "may have perceived that he was treated" unfairly because of his gender, he has not alleged any facts that plausibly support that he made a claim of gender discrimination for which Augusta retaliated. *Knight v. UPS*, No. 1:17-cv-00734-ODE-RGV, 2017 U.S. Dist. LEXIS 60334, at *6 (N.D. Ga. Mar. 24, 2017).

Because Plaintiff has failed to plead sufficient protected expression to support a reasonable inference of retaliation by Augusta, his retaliation claim fails to meet the *Twombly* and *Iqbal* plausibility standard and must be dismissed.

**III.  The Board of Regents and the Official Capacity Defendants cannot be sued and are immune from money damages for violation of 42 U.S.C. § 1983.**

Plaintiff does not dispute that the Board, as an entity of the State, is not subject to a § 1983 action for money damages. *See* Doc. 36 at 18-19. Such actions may only be brought against a "person", which the Board is not. *See Tindol v. Ala. Dep't of Revenue*, 632 Fed. App'x 1000, 1001 (2015); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69, 117 S. Ct. 1055 (1997) ("§ 1983 actions do not lie against a State"). To the extent Plaintiff seeks money damages from the Board, such claims should be dismissed.

In addition, Defendants have immunity from damages for Plaintiff's § 1983 claim. The Board has both sovereign immunity and Eleventh Amendment immunity from Plaintiff's claim. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73, 120 S. Ct. 631, 640 (2000) (State has sovereign immunity); *Nicholl v. Bd. of Regents of the Univ. Sys. of Ga.*, 706 F. App'x 493, 497 (11th Cir. 2017) (Eleventh Amendment bars suits against the States). Immunity extends to the State actors as

well. *See Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764, 768 (11th Cir. 2014). Official capacity suits are only another way of pleading a case against the State, and the State's immunity from money damages extends to the State officials acting on its behalf. *United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 601 (11th Cir. 2014). Defendants are not subject to money damages in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989) (suing parties in their official capacity is no different than suing the State).

Plaintiff admits the Official Capacity Defendants are subject only to injunctive relief—relief that is necessarily prospective in nature. Doc. 36 at 18-19. But he fails to refute Defendants' argument that the injunctive and declaratory relief he actually seeks are remedies of *past* violations, *i.e.*, retrospective relief. *See* Motion, Doc. 32 at 16-17. Reversal of the findings and outcome of Augusta's investigation and correction of his personnel records are without question retroactive relief "serv[ing] to compensate a party injured in the past." *Papasan v. Allain*, 478 U.S. 265, 278, 106 S. Ct. 2932, 2940 (1986). The same applies to enjoining constitutional violations that occurred in Augusta's investigation and adjudication of Plaintiff's sexual misconduct claims—such relief is "tantamount to

an award of damages for a past violation of federal law, even though styled as something else." *Id.*

Because Plaintiff's claims for injunctive and declaratory relief are not prospective in nature, they fail to satisfy requirements of *Ex Parte Young*, are barred by the Eleventh Amendment, and should be dismissed.

## IV. Defendants Thorp, Hutton, and Keel are entitled to qualified immunity in their individual capacities.

Plaintiff cannot and does not dispute that Thorp, Hutton, and Keel had no fair warning that their conduct was in violation of Plaintiff's right to equal protection.[3] *See* Doc. 36 at 34-35. Where the plaintiff has failed to establish fair warning to a government official performing a discretionary function, qualified immunity protects the defendant.[4] *See Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012); *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020).

---

[3] As required on a motion to dismiss, Defendants are "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff," without admitting same. *Laskar v. Peterson*, 771 F.3d 1291, 1296 (11th Cir. 2014).

[4] Though not controlling on this Court, Plaintiff cites (*see* Doc. 36 at 34-35) a Seventh Circuit decision that notes that qualified immunity is appropriate to raise on Rule 12(b)(6) motion: "[T]he existence of qualified immunity is not always dependent on factual development—it is sometimes clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the

For the reasons given above and those cited in Defendants' Motion,

Plaintiff's claims should be dismissed for failure to state a claim upon which relief

can be granted.

Respectfully submitted,

CHRISTOPHER M. CARR      112505
Attorney General

**s/ Bryan K. Webb**
BRYAN K. WEBB
Deputy Attorney General      743580

**s/ Katherine P. Stoff**
KATHERINE P. STOFF
Senior Assistant Attorney General    536807

**s/ Devin Hartness Smith**
DEVIN HARTNESS SMITH     918980
Special Assistant Attorney General

---

case law. In that circumstance, the existence of qualified immunity is a 'purely legal question' that the court can address on a motion to dismiss." *Doe v. Purdue Univ.*, 928 F.3d 652, 665 (7th Cir. 2019). Plaintiff has failed to allege a constitutional right, *clearly established in case law and of which Defendants had fair notice*, that was violated.

PLEASE SERVE:

DEVIN HARTNESS SMITH
Special Assistant Attorney General
Cook & Tolley LLP
304 East Washington Street
Athens, Georgia 30601
Telephone: (706) 549-6111
Facsimile: (706) 548-0956
Email: devinhsmith@cooktolley.com
*Counsel for Defendant Board of Regents of the University System of Georgia and Defendants Thorp, Hutton, and Keel*

## CERTIFICATE OF SERVICE

I certify that I have this day served the foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to all attorney of records.

This 24th day of January, 2022.

**s/ Devin Hartness Smith**
DEVIN HARTNESS SMITH      918980